Good morning, Your Honors. May it please the Court, Counsel. My name is Nicole Fiorelli and I, along with Shmuel Kleinman, represent the appellant Robert Gallagher in this case. I will start with the standing issue since the Court issued an order on that, I believe, last week. Appellant does have standing in this case. He has a concrete injury under TransUnion and this Court's decision in Bassett. Both of those decisions recognize that a concrete injury includes an intangible harm that bears close relationship to a harm traditionally recognized as providing basis for suit in American courts. We have that here. The harm is that the defendant, Santander, interfered with Gallagher's property rights when it delayed releasing the lien on his vehicle longer than what was permitted under Missouri law. Did he try to sell the car during that period? He did not try to sell the car during that time period, Your Honor. Did he try to get a loan on the car during that period? He did not, Your Honor. So what exactly, other than the clouded title, and I understand that's your argument, what exactly, what kind of harm did he suffer? I mean, what did he try to do that he could not do because of the cloud on the title? So it's not that he could have made an action and he didn't. It's that he could not have even if he wanted to and his property rights were harmed in that regard. So there's a lot of case law, and I can give some sites here in a minute, of Missouri cases dealing with slander of title where someone files an improper lien against a property and the plaintiffs bring suit for that. Even without actual damages, the courts have held their time. Missouri doesn't help because Missouri doesn't have the same standing requirements, or at least doesn't have our standing jurisprudence that the Supreme Court has given us. I just, I'm trying to figure out, I understand that TransUnion talks about intangible harms, but I think TransUnion itself, which was a credit case, shows that without wanting to do something, this is just like sort of a temporary deprivation where he has no concrete harm at all. So I think Missouri law is relevant here, not from a standing perspective, but from the point of looking at what sort of harm does common law recognize in Missouri. And so those cases, these cases are instructive because they say even without trying to sell your property, the fact that someone has an improper lien on your property gives rise to injury to sustain a slander of title case. So for example... But doesn't Missouri law still require that plaintiffs suffer a monetary loss or injury as a result of the slander? Because if you look at what's a slander of title action look like, it starts off with, well, you have a statement affecting the title, two, that it's false, and three, that they were maliciously published under Missouri law. And then the last thing that I thought the fourth element was, you have to suffer a loss or damage. And if you don't suffer loss or damage, you can't bring a slander of title. Most slander of title cases are like, you slandered my title, you're claiming a lien you don't own, and so what the remedy is, I want my title cleared and now. So there's always some potential loss there, but I'm trying to figure out, if we magically transported this into Missouri law, could he actually make a stated claim? Right. So I guess, two responses to that. One, it's injury as opposed to... I mean, you could prove it through monetary loss or injury. So there's a number of cases that have held that where you otherwise meet the standard for slander of title, you're awarded your entitled to nominal damages even if you don't have actual damages. And the first case I'll give you, it dates back all the way to 1947, and that's Green Lake Investment Company v. Swarthout, 161 Southwest 2nd, 697. And the pin site is 699. And in that case, they said, it's true, as the defendant points out, that the plaintiffs did not allege any special damages suffered as a result of defendant's acts. But we think that the plaintiff's rights were injured by the acts of the defendants, and on proof of such charges, they would be entitled to nominal damages. And additional cases that have so noted that goes back to 1902, Butts v. Long, 94 Missouri Appellate 687. That's from 1902. Sanders v. Pete & Sons Garage, Inc., 769 Southwest 2D 844, Missouri Court of Appeals, 1989. And Tange v. Franklin County Mercantile Bank, 735 Southwest 2D 766. All of those cases talk about, even without actual damages, it's the cloud of title on your property when it's not supposed to be there. So that's all well and good for Missouri law, but what's the concrete injury here for federal standing purposes? So the interference with the property rights is the injury, and that's what these courts that I just cited have recognized. And so in TransUnion, we have to link, what was the harm here compared to a common law analog? But the problem is if you look at TransUnion, and I hate to interrupt you, there you had the same sort of thing. You had a problem with the credit report. And there they said because it wasn't communicated to a third party in any way, because the plaintiff didn't rely on it in any way, like by trying to get a loan or anything like that, no standing, no concrete injury. And I cannot find a single thing that is different between the facts of this case and the facts of TransUnion. Because I think that dealt with defamation, which is a different tort. And so in this case, dealing with cloud of title and slander of title, the focus is on, and the fact that there's all these cases saying nominal damages are appropriate because of the interference with property rights. It's a harm that the law recognizes. You have a piece of property, and you are supposed to own that outright. You are supposed to be able- Did you seek any relief other than monetary damages? Did we seek any relief other than monetary damages? No, because at that point, the title had been cleared at the time we brought the lawsuit. So what you're really arguing is let's go back to the property 101, you know, when we were in law school. And they say we have a bundle of sticks. And what's going on is that in this particular case, you're saying, hey, they grabbed a couple of my sticks out of my bundle. And so what I had wasn't my full bundle. And while they were holding on to it, I suffered a concrete loss of not having my other two sticks. And those other two sticks were having a title free and clear, you know, because you didn't follow the plain language of the statute, which required that to be released within that timeframe. Right. That's your argument? Exactly. And that's concrete enough? That's concrete enough. And I'll also note that just because it was, you know, delayed by a few days, the amount of time goes to, it doesn't go to the type of harm. It goes to the degree of harm. And under transunion, we need to look at the kind of harm that the common, you know, in relation to the common law analog. And the kind of harm here is interference with property rights. So whether it was a lean on, you know, for two days too long or two years too long, that's a question of degree. Let me ask you about Bassett really quickly, because you said Bassett supports your position. And I don't think it does. I actually think it hurts your position because it deals with statutory penalties. Here we have statutory penalties. There they had statutory penalties. And I actually thought before transunion that statutory penalties were enough to create standing because you had a stake. And so false claims act cases, et cetera. But Bassett says no. Bassett says statutory in the Second Circuit case is the same thing. Statutory penalties are not enough. So how does Bassett support your argument? Right. So the facts don't. I'm saying that we meet the standard under transunion and Bassett, which now requires this connection to a common law analog. And I believe that we've satisfied that. And there, the common law analog was fraudulent misrepresentation, which, you know, the heart of those claims is detrimental reliance. And there was no detrimental reliance in Bassett because they got this letter that did something with the interest on the judgment that they weren't supposed to. But the plaintiff didn't take any action as a result of that. So because that's one of the key elements of that claim, it makes sense why the court ruled the way it did. Here, there's multiple common law cases recognizing that the deprivation of property rights is in and of itself the harm. And we're linking that here, the fact that they had a lien on his property for longer than they were entitled to. I did want to address the Second Circuit opinion in Maddox. So Maddox did recognize that, yes, there's a possibility for a cloud on title when you have a late release. However, Maddox ended up finding no standing because the sale of the property there transferred. And then they took that money and then released the lien after. In other words, there was no cloud on the title because the plaintiff sold the property. So there was no title. She didn't have title at the time the cloud was on it, at the time that there was these extra days where they weren't supposed to have the lien on there. So that, I think, is the key distinguishing factor with the Maddox case. I'll note two other cases that were before TransUnion, however, nonetheless still stand for the proposition that I'm advancing here, is that there's this common analog with cloud of title, slander of title. One is Bolino v. J.P. Morgan Chase. That's 209 FSUP 3D601. That's the Southern District of New York from 2016. The other is Weedon v. MTAG Services, LLC. And the case number is 316 Civil 783. And I'll give you the Westlaw site. It's 2017 Westlaw 776648 from the District of Connecticut in 2017. Both of those cases were late release cases. Both of those courts likened it to cloud of title, slander of title, and said there was standing. So even though they didn't have the benefit of TransUnion saying, hey, you've got to link it to a common law analog, they nonetheless did and held that that was sufficient in order to create standing. And in Bolino, the lien was released two days late. So even those two days were enough of a deprivation of property rights to find that the court had standing. Unless the court has any questions for me, I'm going to reserve the rest of my time for rebuttal. Thank you, Ms. Fiorillo. Thank you. Mr. Martin. Good morning, and may it please the court, counsel. I'm going to do something extraordinary in oral argument and begin by agreeing with my opponent. Santander USA, Consumer USA, also believes that standing does exist in this case and that it is proper under Article III. And so I want to pick up on a couple of points that were mentioned there as we explain our position. We were moved under CAFA, and so we believe that the federal court does have jurisdiction to hear this claim. And one thing that I would note is that the TransUnion case did divide the plaintiffs into two different groups, one group for those credit reports that actually were sent to a third party and the other that were not. Those that were sent to a third party had standing. Those where the credit reports were not sent did not. And that was based upon an analogy to defamation law where there had to be a publication in order for there to be a claim. But the key point of TransUnion relying on the Spokio precedent is that, as counsel noted, the test for concreteness is whether there is a close relationship to a harm traditionally recognized. So in other words, what's being asserted in the case, is there a close relationship to the harm that's traditionally been recognized as a claim? And as noted in this case, there are numerous longstanding common law cases involving slander of title. The 1933 case, Missouri Supreme Court, Wolfsburger v. Hoppenjohn, referred to the ancient jurisdiction of courts of equity to remove clouds from title. And again, the slander of title claim, as noted, has existed for a long time in the common law as well. Now, one thing that I wanted to pick up on is that they don't have to prove, a plaintiff would not have to prove actual slander of title in order to establish Article III standing. The key is, as noted by counsel, kind, not degree. Is it of the kind of matter which traditionally allowed for a lawsuit, not the degree? And I think the best illustration of this is from the Gaddell-Hack v. AT&T Services case out of the Seventh Circuit, 950 F. 3rd 458, 2020 case. And in that case, Judge Barrett, now Justice Barrett, reviewed a claim under the TCPA. And in that case, there were just a few texts. There were just a few texts out there. And so the question was, was this the sort of the concrete harm that allowed for a claim? And interestingly, in that case, and to illustrate the point of kind, not degree, Judge Barrett looked at the common law claim of intrusion upon seclusion and found that the type of activity here bore a close relationship to that kind of claim. Now, the district court had denied the claim and said no standing because just the few texts in this case did not rise to the level of intrusion by seclusion. But Judge Barrett noted that's not the point. The point is whether it is of the kind, the kind of claim, the kind of issue that was resolved by courts previously, not the degree. And that reasoning is adopted by the vast majority of circuits who have looked at this. Last year, in the Drazen v. Pinto case, 74 F. 4th 1336, 11th Circuit, that court found that a single text could have, could establish concreteness, again, looking at this analogy of intrusion by seclusion. But if you're right about this, then Maddox, in your view, is wrong, just flat wrong, because it is the type of claim that you're talking about. I mean, maybe there was no harm from it, as opposing counsel says, but you're basically saying the Second Circuit's flat wrong on this. Actually, I'm saying the Second Circuit proves why there is Article III standing in this case. And let me explain. There are actually two Maddox decisions. The first Maddox decision looked at this New York mortgage release statute. And again, there's a timing when mortgages have to be released. The Maddoxes in that case, they sold their house in September of 2014 and then paid off their mortgage in October. But it was another year before the bank released it. So clear violation of that statute. Maddox 1, when it first looked at this situation, it applied this analysis of traditional harm and close relationship and determined, yes, clouds of title, so forth, that's a close relationship, and found that there was Article III standing. Then the TransUnion case came out. And the TransUnion case, as I noted, had those two groups of plaintiffs. And the TransUnion case had a very tight focus on, were these plaintiffs actually a part of, were they actually harmed? Was there actually some degree, was there some notion, traditional notion of harm there? And again, making the analogy to defamation, they found that, yes, there was for those that had their credit report sent. So Maddox 2, the Maddox decision referenced in this Court's opinion, looked at the issue again after TransUnion and decided that these plaintiffs before them did not because their title was never clouded. Their title was never clouded. But it's still of the type. I mean, that's the problem. You're going to harm. You're saying harm doesn't matter. But these are still of the type of claims that common law court, I mean, you're relying, it goes directly with the Justice Barrett decision. So there's some inconsistency there. Well, I don't think so, Your Honor. And I think that the distinction is here. Mr. Gallagher would claim under his theory of the case, which we disagree with substantively, but under his theory, his title was clouded. He did not sell his car during that time. As they did in the Second Circuit. They claimed that their title was clouded. But it wasn't. Well, that doesn't matter. You just got done telling me that that doesn't matter because it needs to be of the type of claim you bring. You don't have to win it on the merits. It's the type of claim you will bring. It does, but there has to be a nexus with the actual plaintiff to that harm. And in the Maddox case, there was no cloud of title. They sold their house before the time in which the lien was going to be released. So the current owners of the house, they might have had a cloud of title. But the Maddoxes didn't. They sold their house. They had no property that was encumbered by that clouded title. Here, Mr. Gallagher did have that issue because, again, under his theory of the case, the release should have happened, he believes, before it did, and his title was clouded. So TransUnion does have a focus on whether or not the actual plaintiffs in that case were affected. So I think it's consistent. I don't agree, but let's move beyond that, which is what we have here is essentially you've got 10 days, 12 days, whatever it is that they held it too long. He gets a letter in the mail saying, hey, we've got this, but we're going to release it in 10, 12 days. Does nothing in the meantime, absolutely nothing. No harm comes to him. At the end of the 15 days, as promised, the title is completely open and free. How can we say that that's a concrete injury? I mean, just from a common-sense TransUnion point of view, that sounds an awful lot like the people in TransUnion who basically had their credit reports kept to themselves. And, again, it goes to the kind, not degree, argument. Right, I already disagree about that. Right. And even in the TransUnion case, those who had their credit reports sent to a third party, necessarily they didn't provide any damages resulting from that. It was just the fact that it was sent. It was the publication. Here it's the fact that, again, under their theory, the title was held too long, there was a cloud. That's what triggers a particularized harm in this case for concreteness. And I would note, Your Honor, mentioning the Bassett case. In the Bassett case, the Eighth Circuit reviewed a single letter from a Fair Debt Collection Practices Act plaintiff in that case. And they found that there was no standing. Now, what makes that case different is that, again, the plaintiff attempted to establish standing under the test of close relationship to traditionally recognized harm and was unable to do so. So used analogies such as misrepresentation and conversion just didn't fit, just did not fit. Notably, in footnote two of Bassett, the Bassett court noted that the single letter in that case could be analogous to intrusion upon seclusion, but the plaintiff in that case had waived individual damages, and so that analogy was never put before the court. That was waived. So Bassett is not inconsistent with our point on any of these. It does say that the statutory penalties are not enough, and it sounds like you agree with that, having not mentioned that with regard to Bassett. Again, I think the test is, are those statutory penalties of the type that are the traditional harms associated? If they are, then they would. And so just as in this case, the cloud of title issues that are present would tie into those traditional claims such as slander of title. That's where the connection is. Counsel, we weren't able to get to the merits discussion with the appellate. Perhaps we can do that with you. Yes. Please explain why, given the language of the statute, that the reference to electronic payment being received would not have been sufficient to trigger the obligation of Satandar to supply a clear title. Yes. Thank you, Your Honor. The district court correctly found that the phrase, receives payment in full, is ambiguous as used in the context. Applying Nassiter Associates, that canon of construction, you can tell the words by the company they keep, noted that the first time that that's mentioned, receives payment in full in the form of certified funds. That is important that it is distinguished from receives payment in full electronically or by way of electronic funds transfer. If there was no distinction there, if there was no reason to distinguish between them, they would not have made that distinction. The legislature would not have made that distinction. And the court noted, remember what's being asked here is somewhat draconian. The lender is being asked to take an irrevocable act, release title. And to do so with a very- That's being put into the statute. The statute doesn't say irrevocable. Well, but when title's released, title's released. That's it. They lose their collateral. And in the record, Amanda Van Haren- But the idea that somehow the payment itself can't be able to be returned, that's something that's not in the statute. The statute simply refers to payment in full electronically or by way of electronic funds transfer, whichever occurs first. Correct. And that's why the judge found that that was ambiguous and that it would lead to an absurd result. But it also creates enormous uncertainty as to when a person is entitled to receive a clear title when that seems to have been the purpose of the statute's creation all along was to create some sense of understanding about when this can take place, when it must take place, and when someone has an enforceable right to get it. Your Honor, I think the purpose of the statute would be to balance the interests of the owner of the vehicle to get that title released in a timely manner as well as the lender to make sure that the lender receives payment that is proper to take the step of releasing that collateral. Why not just pick 60 days or 120 days? I mean, really what we're doing is we're leaving it up to the lender. A lender might just say, Boy, I really like that float, love that float, because I can invest it and make a whole lot of money over it. And you know what? I've had a couple of titles that have taken 180 days or checks that have taken 180 days to clear. Sometimes they get lost in the system. So we'll go ahead and pick that time limit. Well, Your Honor, I think you do have to impose some reasonableness on this issue. Where is that in the statute? I think that's in general. I mean, you look at the cases we cite, such as the Aquila case. You don't have to get there if you've got statutory language that says you've got this number of days once you've been paid. Well, the statutory language says within five business days after the satisfaction. I think it's common knowledge that if I bring you a certified check or if I wire you funds, you have those funds right away. If I write a normal check or if I send an electronic funds transfer, I think it's just understood that it doesn't happen right away, that there's a time period that allows for that to clear. So there's a reasonableness that's put in here. The record before this court established that Santander was doing a very reasonable type of approach to this by calculating the returns and how long it usually took for revocation and then allowing it to go out after that time. If a plaintiff brought a suit or if there was an issue and there was no basis, there was no reason, like 60, 80, 180 days, then liability could arise. But in this case, that's not the case. There was an industry standard, good funds rule that's in the record that our director of titles… The industry standard doesn't trump a statute. It doesn't trump the statute, but it explains when it receives payment in full from non-certified funds, when it is that that becomes appropriate. But it just says receive. Receive is just to take possession or delivery of. And you've taken possession or delivery of at that point. And listen, I think as a matter of legislative prudence, what you're describing is imminently sensible, but I'm trying to figure out how do you read it into the statute without rewriting it? Again, I think that the fact that it does say receives payment in full and the district court properly noted that has to mean something. It has to mean something when it's by certified funds. It has to mean something when it's electronically. Judge Pitlick noted that it was not a situation where it was five business days after they were authorized. It was after receive payment in full. Well, doesn't in full mean in context? I'm just reading the plain language. It means let's say you owe $10,000. If you pay for $5,000, you don't have a release of title. But if you pay $10,000, which is all you owe, that's a payment in full. How am I misreading that? If I could finish, the amount would be the full amount, but the lender would not have payment in full such to trigger a satisfaction until it knew that those funds weren't going to be pulled out. Remember, in the record, Amanda Van Haren, director of title, testified that 700 times a month there can be situations where there's an electronic fund transfer and it's pulled back, and that's why Santander has a reasonable approach, one that I think that is understood by all consumers, that when you pay with certified check versus another type of means, that they're going to be different. And the district court properly performed that analysis. The district court was looking at payment in full and talks about satisfaction of the debt, and it relied on Black's Law Dictionary. But the problem is that isn't there a statutory definition for satisfaction in this particular statute or in this code provision? I mean, it does say five business days after the satisfaction and then says that it's satisfied when the lien holder does these things, receives payment in full, but that's where the district court, that's where Judge Pitlick found, that that's where the ambiguity comes in, that it simply can't mean the same thing. It would be an absurd result to force a lender to release title before it had funds that could not be taken back. And again, we impose a reasonableness type of approach to this, but Judge Pitlick's reasoning was very well grounded in terms of the statutory approach to this statute. I see my time's expired. Any additional questions? I see none. Thank you, Mr. Martin. Great, thank you. Ms. Fiorella? Thank you. I suppose I don't have anything to rebut. On the standing issue, I will just note that one question, Your Honors, had raised in the order was, you know, what happens if we do find there's no injury here for standing? And according to this Court's decision in Wallace v. ConAgra Foods, 747F31025, a 2014 opinion, if this Court finds that there is, in fact, no standing since it was originally filed in state court, it must be remanded back there as opposed to being dismissed. Moving on to the merits, I think Your Honors' question sort of highlighted a lot of my arguments already, so I'll be brief here. A couple of things to add. I heard the word reasonable a lot from Mr. Martin. And, you know, in the context of whether something is absurd, that's a very high bar. And just because there could be a better policy, maybe it is, I'm not conceding this, but maybe it is a better policy to allow time, more time for the funds to clear. Just because there is a better policy doesn't mean we're allowed to rewrite the statute. And the case we cited in our brief for that is Atkinson v. First Plus Bank, which is a Missouri Court of Appeals decision from 2004. The next point I'll make, which I think might have been asked in one of the questions, is just because there is an industry practice here, again, does not mean that that can change the plain language of the statute. And the case we cited for that was State in Ashcroft v. Riley, 590 SW 2D 903, Missouri case from 1980. And finally, one thing that we did not talk about was the fact that the legislature said there's two types of payments that we're going to regulate here, that once you receive payment in full, five business days later you have to file a release. And that's certified funds and it's these electronic payments. The legislature did not regulate personal checks, cash, crypto, whatever other kinds of forms of payment there are, only regulated these two particular kinds. So with those kinds, say personal checks, the lender receives the payment for the full amount. The lender can use their own individual policy about when it feels like the funds are clear in order to release the lien. It is not mandated by the five business day rule. I do think, though, that you're pointing out why this is a terrible policy. It may be not our call, but it is a terrible policy if you are indeed clawing back $700 a month, that you'd be releasing title and have no recourse against people who claw back their electronic payments. Again, maybe not for us, but it doesn't seem like a very sound policy.  I think two things. One, it is not for us to opine on what might be a better policy. And two, the lender is not completely without recourse. It's just that they no longer have collateral. There are still other collection efforts that they can take to get that last final payment from the borrower. But if the collateral didn't matter, we wouldn't fight so much about it all the time, right? I mean, if you look at all the commercial litigation, collateral is meaningful because it can satisfy the debt. It's something tangible that you can grab onto free and clear of anyone else's claims or any other claims of exemption, right? Sure. So they're giving up something that's real and tangible to get a chosen action. As a guy that used to represent banks once in a while, you could paper the wall with all the judgments you get in those things. Sure, and I don't dispute that. I guess I'm just saying it's not a completely absurd result because they do have other means of collection. And the legislature has decided that these two specific types of payments should be subject to this expedited lien release process. I see my time is up. I would ask this court to reverse the district court's decision granting summary judgment to Santander and also reverse the decision denying class certification, which was not looked at on the merits but rather just on the basis that summary judgment was granted. Thank you very much. Thank you, Ms. Fiorelli. Thank you also, Mr. Martin. Quick question. Would the court entertain any supplemental briefing on the standing issue since that was raised last week? Would that be helpful? Yes. If you've got something very brief that you can submit to us, that would be fine. Okay, great. Thank you. Thank you, counsel. Court, thanks both of you for participating in argument before us. We'll wrestle with the issues and render decision in due course. Counsel may be excused. Madam Clerk, I believe we have one more argument.